NAPIER, Appellant,

v.

CENTERVILLE CITY SCHOOLS, Appellee.

[Cite as *Napier v. Centerville City Schools,* 157 Ohio App.3d 503, 2004-Ohio-3089.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20185.

Decided June 10, 2004.

504

Don A. Little, for appellant.

Janet K. Cooper, for appellee.

FAIN, Presiding Judge.

{¶ 1} Plaintiff-appellant, Opal Napier, appealed from a decision of the Centerville City Schools terminating her employment upon a finding of neglect of duty. The Montgomery County Court of Common Pleas affirmed the termination. Napier now appeals from that judgment, claiming that the Centerville City Schools Transportation Handbook created a contractual relationship between her and the school system. She also contends that her sanction—termination—was disproportionate in relation to other cases.

{¶ 2} We conclude that Napier was an at-will employee, subject to termination, and that the evidence in the record does not support a finding that the handbook created an implied contract for employment. We further conclude that the decision to terminate Napier's employment is supported by the evidence and is

not disproportionate in relation to other cases. Accordingly, the judgment of the trial court is affirmed.

I

{¶ 3} Napier was employed as a school bus driver for the Centerville City Schools and was assigned to drive a kindergarten route. On the morning of September 6, 2002, Napier transported kindergarten students to school. After the students exited the bus, Napier returned the bus to the school bus garage. Napier parked the bus, exited, and left the premises.

{¶ 4} Shortly thereafter, another school bus driver walked by Napier's bus and heard a child screaming from inside the bus. The bus driver found and removed a four-year-old child from the bus and took her to the Transportation Office. Transportation Supervisor George Sontag was notified. The child was subsequently transported to school.

{¶ 5} Sontag and Assistant Superintendent Gary Smiga retrieved and viewed the videotape from the bus.[1] The videotape shows that during the bus ride, the temperature on the bus reached 105 degrees Fahrenheit.[2] After the bus was parked, the temperature on the bus reached 122 degrees Fahrenheit. The videotape further demonstrates that Napier did not visually inspect any of the bus seats, either when the students were dropped off at school or when she parked in the garage. The videotape shows that after the bus was parked and Napier had exited, the child stood up on her seat and began to scream for her mommy. Some time after the videotape camera shut down, the child was found.

{¶ 6} Pursuant to regulations adopted by the Ohio Department of Education, bus drivers are required to visually inspect each seat of their bus at the conclusion of each trip to ensure that all passengers have left the bus. This duty entails checking the bus after the students are dropped off at school and after the bus is returned to the garage. Centerville City Schools bus drivers are provided training regarding this regulation and are provided reminders of the regulation during the course of the school year. They are provided a Transportation Handbook, which also stresses the importance of the visual inspections.

{¶ 7} When Napier returned for her afternoon route, Smiga and Sontag met with her and informed her that a student had been left on her bus. When asked, Napier indicated that she had visually inspected the bus. However, after being

---

1. The school buses are equipped with videotape cameras, which activate when the ignition key is turned on and continue for approximately four minutes after the bus is shut down.

2. During the course of the proceedings below, Napier acknowledged that the "heat was so intense" that she was "sweating all over."

confronted with the videotape, Napier admitted that she had not performed the required inspection. Napier was placed on paid administrative leave.

{¶ 8} Thereafter, Napier was sent a letter informing her that a hearing would be held on September 11, 2002. Napier appeared at the hearing without representation. After the meeting, Smiga sent Napier a letter informing her that due to her neglect of duty he intended to recommend that her employment be terminated. Napier was informed that she could appeal the recommendation for termination to the superintendent.

{¶ 9} Napier requested a meeting with the superintendent, and a hearing was held. Napier appeared, with counsel, and admitted that she had violated Ohio law and Centerville School Board policies. However, Napier's counsel took the position that termination was an inappropriate sanction.

{¶ 10} The superintendent recommended that the board terminate Napier's employment. The recommendation was accepted by the school board, and Napier's employment was terminated by letter dated September 24, 2002. Thereafter, Napier filed an appeal with the Centerville City School District Personnel Appeals Board, which upheld the termination. Next, Napier filed an appeal with the Montgomery County Common Pleas Court, which also affirmed the termination. Napier now appeals to this court.

## II

{¶ 11} Napier's first assignment of error states as follows:

{¶ 12} "The common pleas court erred in sustaining the decision of the Centerville City Schools Personnel Appeals Board, which sustained the termination of appellant as a school bus driver, because the Centerville City School's Transportation Handbook does not allow termination in this case."

{¶ 13} Napier contends that the Transportation Handbook given to the school bus drivers creates an implied contract between the school district and its employees. Her argument is based upon the fact that the handbook provides for progressive discipline in the event that an employee does not adhere to the regulations. She argues that to hold that the handbook does not create a contract would render the handbook meaningless. She further states that "[t]he unilateral issuing of these rules by the School Board, when they are adopted by the School Board, create[s] an implied contract between the School Board and its classified employees."

{¶ 14} In this case, there does not appear to be any dispute that Napier was an at-will employee. Generally, an at-will employee may be terminated for any reason not contrary to law. *Henning v. Marriott Hotel & Resorts, Inc.* (May

25, 1995), Montgomery App. No. 14926, 1995 WL 316174. "However, there are two exceptions to this general rule: implied contract and promissory estoppel." Id. Napier argues that the handbook constitutes an implied contract and therefore changes her status from at-will to a contractual employee.

{¶ 15} "[A] handbook may be found to alter the terms of employment at will only if the employee and employer have agreed to create a contract from the writing. In the absence of mutual assent, a handbook is merely a unilateral statement of rules and policies which creates no rights or obligations." *Adams v. K–Mart Corp.* (Feb. 5, 1999), Greene App. No. 98CA75, 1999 WL 49146, quoting *Henning*, supra.

{¶ 16} Napier has failed to present any evidence to demonstrate mutual assent to enter into a contract. Moreover, the record is devoid of evidence to indicate that the handbook represents anything more than a "unilateral statement of rules and policies." Indeed, Napier's own appellate brief concedes the unilateral nature of the handbook.

{¶ 17} Based upon the record before us, we cannot say that the trial court erred in finding Napier's claim of implied contract lacking in merit. Accordingly, the first assignment of error is overruled.

### III

{¶ 18} The second assignment of error provides as follows:

{¶ 19} "The common pleas court erred in determining that the discipline imposed on appellant was not discriminatory, disproportionate, unfair, and inequitable when compared to other cases and, thus, her termination by the Centerville City School Personnel Appeals Board was not arbitrary and illegal."

{¶ 20} Napier contends that termination of her employment was an inappropriate sanction, given the facts of the case and based upon the disposition of similar cases. Specifically, she argues that the fact that the child was not harmed militates against termination. She also argues that the school district did not terminate the employment of other bus drivers following similar incidents.

{¶ 21} In reviewing administrative decisions, "the Court of Common Pleas must weigh the evidence in the record, and whatever additional evidence may be admitted pursuant to R.C. 2506.03, to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the agency decision." *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 389 N.E.2d 1113. "An appellate court's review of a trial court's decision affirming an administrative decision is even more limited." *Arnett v. Franklin Monroe Local Bd. of Edn.*, Darke App. No. 1567, 2002-Ohio-

3559, 2002 WL 1483149, at ¶ 15. "Unless we can say, as a matter of law, that the decision of the trial court is not supported by a preponderance of reliable, probative, and substantial evidence, or otherwise illegal, the trial court's decision must be affirmed." Id.

{¶ 22} We begin by noting that only one of the other "similar" cases to which Napier refers is, in fact, similar. In that case, a bus driver did not inspect the bus after dropping students off at school. However, prior to leaving the bus, the driver discovered that a child had not exited the bus. The bus driver was not discharged.

{¶ 23} While this incident and Napier's case are somewhat akin, the fact that the other bus driver did in fact perform his duty and discover the child, even if belatedly, and the fact that the child was not abandoned on an overheated bus in which the temperature had reached a life-threatening level, make the two cases sufficiently dissimilar to persuade us that Napier has not shown a disparity in treatment.

{¶ 24} Furthermore, the record demonstrates that Napier had been a bus driver with the Centerville schools for 26 years, and that she was well aware of the need to visually inspect the bus. It also demonstrates that Napier was aware that the bus was extremely hot on the day she failed to inspect. The fact that the child did not suffer any physical harm does not negate the seriousness of Napier's conduct.[3] The child was exposed to a significant risk of great harm, perhaps including death, and the heightened hazard posed by the extreme heat was something of which Napier either was aware or should have been aware.

{¶ 25} After reviewing the videotape and the entire record, we cannot say that the school system was unreasonable in finding that Napier's conduct was so egregious as to warrant termination. We conclude that the decision to terminate Napier is supported by reliable, probative, and substantial evidence. Therefore, we find no error on the part of the trial court. The second assignment of error is overruled.

IV

{¶ 26} Both of Napier's assignments of error having been overruled, we affirm the judgment of the trial court.

Judgment affirmed.

WOLFF and GRADY, JJ., concur.

---

3. The record in this case intimates that the child may have suffered some psychological harm.